Case number 24-3483 from the District of Nebraska, United States v. Tyler Denby. May it please the court, opposing counsel, members of the gallery, my name is Desiree Solomon. I am the attorney appointed to represent Mr. Tyler Denby. I'm going to start by asking this court to interpret the plain reading of Congress' statute regarding a court serving in its gatekeeping role as protecting a mentally ill and incompetent person from proceeding to trial without first having a mental competency evaluation. The issue in this court comes from the initial arrest of Mr. Denby. What we can tell from listening on the video is that his mother had alerted law enforcement directly that he was suffering from suicidal attempt or attempt, and he was mentally ill and he needed to be evaluated. Law enforcement, based on that representation, and I would argue based on some of the statements he made that day, did take him to the hospital first. He was evaluated at that point in time. So at the first motion to suppress hearing that was conducted in 2022, that was before Matt Magistrate Zor. That video was offered as evidence in that motion to suppress hearing. That's part of the motion to suppress record. So that would have been the first time that a magistrate would have known that there was an allegation of a suicidal attempt and that somebody was suffering from a mental illness and that they needed to be evaluated. There was no inquiry by Magistrate Zor at that motion to suppress hearing or in subsequent hearings regarding was Mr. Denby currently suffering from any suicidal ideations or was he suffering from a mental illness. That was never done in this case. Judge Gerard reviewed Magistrate Zor's findings. That would also include him reviewing the video in this particular case. That was not brought before the court under that shall. And that's what 18 U.S. C.S. section 4241 requires, is that the court shall do that. And that's because Judge Bezos had the case. She had the trial. But according to this statute, any time before sentencing, any of the trial courts have that duty. So when I looked at the plain red, when I was reading and reviewing for appellate purposes, it says the court shall order a hearing on its own motion if there is reasonable cause to believe the defendant may presently be suffering from a mental disease or defect rendering him. The first sentence says after the commencement of a prosecution for an offense and prior to the sentencing of the defendant. So I kind of got backwards on that. And when we look at our case law here, I think when the most case, excuse me if I pronounce this right, I say it, gone, U.S.B. gone, G-H-A-N-E. In that particular case, I thought it was very illustrative of how courts deal with mentally incompetent people. What happened there is there was a competency hearing. This person was indicted for possession of cyanide. He was suicidal at the hospital. They did the competency evaluation. He was declared incompetent. Subsequently, and that was probably within eight months of his indictment, subsequently to that, he was restored to competency. And then the court noted you always have a duty. These things are always, they're not, with psychiatrists in that particular case said you have to pay attention to whether these delusions return because these are not cures. That's my argument for this. And so in that particular case, five days before the trial, the court was alerted by counsel that these delusions had returned. And so they did another competency evaluation. In that case, it was actually the mentally ill person that was raising the air. But I point that case to this court's attention because that's exactly what I think Congress wanted courts to be doing is constantly, as the gatekeeper, protecting mentally ill people. Well, I heard a big difference there. We have at least four attorneys representing you. Are you the fifth or do you know what number you are? I am the fifth court appointing counsel for Mr. W. I thought I had the number four, right? That's really what I was checking on. So we've had four attorneys and none of them ever raised this, right? And that should shock the court, too. Because they have under this statute, they may raise that. And why they didn't, that's concerning. And that really goes to my second argument of the ineffective assistance of counsel. Go ahead. Before you go to the next issue, I'd like to go back to, I think the most important words you read to us were reasonable cause. Would you agree that just because someone's mental illness doesn't necessarily trigger a competency error, there has to be reasonable cause to believe that they can't participate in their own defense and that they don't understand consequences of the judicial proceedings? What's the standard? Because it can't just be that everyone who's mentally ill or exhibits some bizarre behavior gets a competency error. I may actually be answering his question with your question, so apologies, the way I'm going to answer this. I think from the record, when you know somebody has made a suicidal attempt, that really falls under trophy Missouri where somebody had a suicide attempt and the court noted in that particular case that a suicide in and of itself should render the concern regarding somebody knows what's going on in these proceedings. So with the four attorneys that you previously had, when you have somebody that is mentally ill and you're trying to represent them, it is very difficult to represent a mentally ill person because they're not comprehending the materials that you're giving to them. And the way that the due process clause works and the way that this statute works is that that motion should have been brought before the court by the four prior attorneys, which again, Judge Brennan, I know I'm getting into the second argument, trying to answer yours, but it's really too prompt. That's what I saw as the biggest issue is pointing to this court the issues I saw with his incompetence to understand these proceedings. If you don't understand the proceedings, you're not going to be able to get along with your attorney. You're not going to be able to understand what they are saying to you and how they're trying to advise you about a plea being in their best interest or why they should plead or why the evidence is this. And so I stand here as the fifth attorney begging this court to look at this statute and protect a person who is incompetent and can't protect themselves. That's my argument. But all we can look at as an appellate court is a record that's before you regarding an individual who by the time he gets in front of Judge DeLuca at the, it's a year later, he is, Judge Brennan, he's on his fourth attorney by this time. And that attorney, I thought, did something very good in this particular case. And in that case, he got the medical records in from the hospitalization that showed exactly what his diagnoses were, which would have been another attempt to look at, is this person suffering from a current mental illness and to make that inquiry, then based on that inquiry, could have gone forward with ordering the motion for asking for the competency evaluation to be conducted. And I think that was my notice for rebuttal. Yes, it was. Thank you. Thank you. Ms. Smith. Good morning, your honors. Good morning, counsel. May it please the court. My name is Tessie Smith, and I represent the United States. Starting with some of the questions that were asked to opposing counsel, I believe the case law says that... The court. Counsel, one second. Attention. This is GSA with an update in regards to the power outage impacting a large portion of the downtown area. The best information we have currently from OPPD is that the power is estimated to be restored at 1.30 p.m. The building is currently running off of emergency power. We have one functional elevator. The parking garage door and surface lock gates are open and functional for egress. Thank you. Okay, and let's start her time again for continuity. I stopped it. Say it again. I stopped it. Okay, I mean... Oh, just all over? How far had she already done so? Just... About. 50 seconds. Yes, yeah. You may begin your argument again.  Ms. McKee, it's okay for you to time it that way, right? Yes. Okay, good. Let's begin. Thank you very much, Your Honor. I would like to start with, I believe there was a question to opposing counsel about what's the standard? What is the standard a judge is supposed to go by at the district court level when determining whether a competency evaluation should be ordered? And I believe the case law says sufficient doubt. There have been three factors which the court should look to to see whether there is sufficient doubt as to a person's competency. Evidence of irrational behavior, demeanor of the defendant, and any prior medical opinion. It appears the appellant's argument is primarily that there was irrational behavior in this medical opinion. I want to stress to this court that the record is so limited when it comes to those issues that that is why the court did not ask for a competency hearing or a competency evaluation in this case. So first, evidence of irrational behavior. Yes, he acted irrationally somewhat on the day of his arrest. That was July 31st of 2021. He was sent to the hospital because of that. Actually, it wasn't because of his behavior, it was because of his mother's insistence that he was suicidal. His mother, who was there at the scene as his vehicle was being searched. And so the jail wouldn't accept him until he was medically cleared by the hospital. So he was sent to the local hospital to be evaluated, and he was observed during that time. The appellant mentions the medical evidence table. Those medical records, to begin with, they were only submitted in July of 2024, very shortly before trial, and they were only submitted in favor of the motion to reopen suppression. In fact, the defense only directed the court to a single line on one page of the 32-page document. Now, within that medical set of medical records, all of those records are from a single day. They are all from July 30th of 2021, the day he was arrested. They are the medical records from that hospital he was sent to. Most of the symptoms that are listed within those 32 pages of medical records are symptoms that were provided by the defendant himself and his mother, not necessarily observations by the medical professionals that day. But even the medical professionals that day, their observations, it's from a single day from a few hours of observation. And there is no history mentioned in those medical records. There's no former medical diagnosis mentioned in those records. There's just the doctor's impressions from that single day. Now, going to what is ample in the record that the district court had to consider was his demeanor as he appeared before them. How many judges did he appear in person before? He appeared before three judges in person. Judge Girard is the only judge that was mentioned that he did not appear before in person. And this is over a period of how many years? Four years? Two and a half from the beginning of the federal criminal case to sentencing, I would say. Yes, Your Honor. So he appeared before Judge Swart for the initial appearance, for numerous motions to fire or have his counsel withdraw. He appeared before Judge DeLuca for the motion to reopen, for a fry hearing, and for additional motions to withdraw or fire counsel. And finally, Judge Bezos, he appeared before her in a pretrial motion right before trial, trial itself and the sentencing. So these judges, their observation is owed deference. He didn't have signs of irrational behavior when he appeared before them. His demeanor was not suggested of having a mental competency issue. And therefore, mental competency was not ordered by any of the three judges. And I believe that decision is owed deference. Now, Your Honor, I believe that the mental competency issue goes to many of the issues raised by appellant in this case. I would like to switch gears to one issue where mental competency is not at play. And that is the appellant's argument that the court abused its discretion in admitting the child's underwear that was found in Mr. Denby's vehicle during the case. During the trial, that is. The district court did not abuse its discretion to admit it either as intrinsic evidence or as 404B evidence. Let me ask you about intrinsic. Yes. How does it tell the story of the crime? So, here's the distinction here, is that I understand in the case law, oftentimes it's not, evidence like this is not intrinsic in a child pornography case. But in this case, it is necessary to tell the story of why Mr. Denby's devices were searched for child pornography. Now, that tells the story of the search. That doesn't tell the story of the crime. Under VACTA, it has to tell the story of the crime. But under Guzman, it indicates that the finding of marijuana in a vehicle which led to the search of a residence, that was sufficient. So I believe Guzman is a little bit in conflict with that. And this court said in Guzman that the court was reasonable in finding that, that the marijuana found in the vehicle was intrinsic because it in part led to the search of the residence where methamphetamine was found. I actually think your much more powerful argument is under 404B, which is the, in particular, refuting the defense from when he was arrested, which is, oh yeah, I was just getting this, you know, from the vendor so that I could turn him in, right? And that I think is a, sort of the, refuting that defense is probably your most powerful argument. I didn't see that specifically made, but you did, you did talk a little bit about that when, at the time of the trial. I would agree with you there, your honor, and I also believe it is very admissible under 404B to show knowledge. In Mr. Denby's interview, he indicated at one point when he was being asked about a file, he said, oh, that file's animated. So he was indicating he didn't know that they were children. He also said at one point in time when the officer asked, how old are the participants of this video? I don't know. He indicated he did not know the age. And as your honor knows, knowledge of both what you're possessing, so knowledge that you are possessing and transporting child pornography, those are elements, as well as knowledge of the child's age in these files. Well, here's the problem with that. How does children's underwear, I mean, he's not a parent, but so if you find children's underwear in somebody's car, how does children's underwear show that he possessed child pornography, or that he had knowledge that it was child inflection here? Because I believe if you see a pair of children's underwear that are this, or underwear, we'll say underwear, that are this large, and his testimony also was that he was trying to fit into it. So if he couldn't fit into it, it has characters, cartoon characters on it. You know this is children's underwear that you are in possession of. So did those same, whatever the child, they're not actors, they're actresses, but those big children have that kind of underwear on so that it showed that there was some knowledge between the underwear that he saw and the underwear that was on these videos? There were some files within his child pornography collection that had children in underwear provocatively posed. I couldn't tell you where the underwear in those files were character underwear, but there were files depicting children in underwear. I'm having a hard time seeing the connection. I've got to be honest with you. I think that's probably a weaker basis for admission. Certainly. Counsel, were there 25 pairs of children's underwear in the car? I believe it was approximately 25. It might be slightly... Are pictures of those in the record? What's that? Are pictures of the 25 pairs of underwear in the record? Yes, Your Honor, they are. Thank you. And then finally, even if this court finds that it's not intrinsic, even if this court finds that it's not 404B, it was harmless error to admit. The evidence of Mr. Demby's guilt was overwhelming in this case. The child pornography files were shown to the jury. It was mentioned that the child pornography files were found on SD cards in his wallet, in his pocket, and they were very carefully wrapped in a special wrapping. His interview was also admitted, where he admitted to downloading, seeking out, getting used to the term child pornography in his interview. To end, there was even a quote by him during his interview, which was played for the jury, when the officer asked, Okay, Mr. Demby, what is your preferred child pornography? Of any type of pornography, what do you prefer? And he said, and this is a direct quote, BBC versus little white girl. BBC meaning big black cop. And your honors, if there are no more questions, I'll submit for the rest of my time. Thank you, counsel. Ms. Stolten. Thank you. I would point the court's attention to the record that was offered for Mr. Luca to reopen, and in that particular case, it does state on page 15 that he was, patient was accepted to Richard Young. They were awaiting a provider. The direct evidence is on page 16. The doctor himself noted that Mr. Demby called him a terroristic, and used the F word to describe him, a doctor. The doctor also indicated during his observation that Mr. Demby pointed to an IV pump and asked if there was a number sequence in order to blow it up. This was during, this is during that. The seven years ago there was a motor vehicle accident, that was on page 23 of the document, also documents, and makes a diagnosis on page 20 and 25 of those documents, as far as what his medical diagnosis was. What included traumatic brain injury, paranoia, psychosis. That's why they were trying to find him a bed. I would point to that that would dispute, and also the October 21 and February 22 interviews with him, he continues to go on this paranoia, and just reiterating even a year after his arrest, he's talking about the same paranoid delusions in what he's doing. So I wanted to point the court to those specifics of what was before Judge DeLuca, of we know what his diagnosis is. This is different than other cases that have been before the court, or somebody raises it after the fact. We know what his diagnosis was at that time, and there was never the inquiry into what is this person currently going through. Counsel brought up the fact there had been so many attorneys on this particular case. Would have been a great time to say, what is this person suffering from? Do they have a mental illness? Is this person under medication? I find that we do not plead people before the court without going through a question on a plea petition that says, have you ever been diagnosed with a mental condition? And if so, when and what was it? We go through that when we let people waive their rights. So why aren't we asking those same questions before people are going to trial, especially when you have the knowledge in the record of stating what somebody has been diagnosed with? And I'm asking the court to vacate his sentence so he can be retried on these particular matters. Thank you. Thank you, counsel, for the argument. Thank you both, counsel, for the argument. Case number 24-3483 is submitted for decision by the court. That concludes the docket for today. Court will be in recess until 10 a.m. tomorrow morning.